UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. MERCHANTS FINANCIAL GROUP, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2119-B |
| LOUIS MARTIN, JR., CHARLES ARTHUR CLARK a/k/a CHUCK CLARK, JSCA, INC., and CANNA FARMS, INC., | § § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff U.S. Merchants Financial Group, Inc. ("U.S. Merchants")'s Motion for Default Judgment (Doc. 32). For the reasons discussed below, the Court **GRANTS** Plaintiff's motion.

I.

BACKGROUND

This is a fraudulent-transfer case. In 2013, U.S. Merchants obtained a judgment for fraud against Defendant Louis Martin, Jr. ("Martin") in the 134th Judicial District Court in Dallas County, Texas (the "Texas Judgment"). Doc. 17, Am. Compl., ¶¶ 20–22; Doc. 17-3, Tex. J.; Doc. 17-6, Martin 2013 Findings & Conclusions. Following judgment, Martin filed for bankruptcy, but the bankruptcy court determined that the U.S. Merchants debt was non-dischargeable as a debt originally obtained by false representations. Doc. 17, Am. Compl., ¶ 25; *In re Martin*, 2017 WL 1316928, at *11 (E.D. Tex. Bankr. Apr. 7, 2017). According to U.S. Merchants, the Texas

Judgment "remains unpaid, and the total balance due . . . with accrued interest is over $675,000." Doc. 17, Am. Compl., ¶ 53.

U.S. Merchants claims that between November 2018 and April 2020, Martin moved money totaling $34,464[1] from his personal bank account and the bank account of his alter ego, The King's Court Solutions, Inc. ("King's Court"), to Defendant Canna Farms, Inc. ("Canna Farms"). *Id.* ¶¶ 49, 57; Doc. 32-1, Gannon Decl. Exs. A-4, A-5, A-6. Martin is the president of Canna Farms and is a signatory on its bank accounts. Doc. 17, Am. Compl., ¶¶ 7(c), 59; Doc. 17-2, Articles of Incorporation; *see also* Doc. 1, Not. Removal, 5. U.S. Merchants avers that Martin previously admitted to using King's Court, Canna Farms, and other business accounts for personal expenditures in order to "stay[] one step ahead" of his creditors. Doc. 17, Am. Compl., ¶ 49. In addition to the Canna Farms transfers, U.S. Merchants alleges that Martin incurred $481,000 in debts, including: a $425,000 mortgage payable to JSCA, Inc. ("JSCA"); a $50,000 wire transfer from JSCA to Martin's King's Court account; and a $6,000 loan payable to Chuck Clark ("Clark"). *Id.* ¶¶ 34–35, 39; Doc. 32-1, Gannon Decl., ¶¶ 11–14, Exs. A-7, A-8, A-9. The transfers made to Canna Farms and obligations incurred to JSCA and Clark were only uncovered in post-judgment discovery. Doc. 17, Am. Compl., ¶ 40. U.S. Merchants avers that Martin has since absconded to Florida. *Id.* ¶ 50 (citing Doc. 17-12, Martin Decl. Domicile).

---

[1] This number represents the sum of thirteen transfers identified by U.S. Merchants as follows:

$7,000 on November 14, 2018; $4,500 on December 14, 2018; $1,700 on February 11, 2019; $2,000 on July 1, 2019; $1,200 on July 3, 2019; $100 on July 3, 2019; $89 on July 23, 2019; $425 on July 29, 2019; $3,500 on October 7, 2019; $4,400 on October 18, 2019; $1,700 on November 1, 2019; $7,500 on March 24, 2020; and $350 on April 29, 2020.

Doc. 17, Am. Compl., ¶ 57; Doc. 32-1, Gannon Decl., ¶ 10.

On July 30, 2020, U.S. Merchants filed the instant suit in Texas state court bringing various claims against Martin, Canna Farms, Clark, and JSCA. Doc. 1-1, Original Pet. Martin and Canna Farms were served on August 5, 2020. Doc. 32-1, Gannon Decl., Exs. A-2 (Martin), A-3 (Canna Farms). With Martin and Canna Farms' consent, Clark and JSCA removed the action to federal court on August 10, 2020. Doc. 1, Not. Removal, 5. Since then, Clark and JSCA settled with U.S. Merchants, and U.S. Merchants amended its petition to allege claims against Martin and Canna Farms for (1) fraudulent transfer and (2) civil conspiracy.[2] Doc. 17, Am. Compl., ¶¶ 54–67; Doc. 26, ADR Summ.; Doc. 28, Stip. Dismissal; Doc. 30, Order Dismissing Clark & JSCA. To date, Martin and Canna Farms have not answered or otherwise appeared.

On September 28, 2021, pursuant to the Court's order, U.S. Merchants moved for entry of default and for default judgment. Doc. 30, Order; Doc. 31, Pl.'s Request Entry Default; Doc. 32, Pl.'s Mot. The Clerk made entry of default on September 29, 2021. Doc. 33, Clerk's Entry of Default. Martin and Canna Farms (collectively "Defendants") failed to respond to U.S. Merchant's motion, and the time to do so has passed. Accordingly, the Court now considers the motion for default judgment.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ.

---

[2] U.S. Merchants has also alleged a claim for alter ego liability for acts of Canna Farms; however, under Texas law, alter ego liability is a remedy and not a cause of action. *See In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987); *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014).

P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: IFUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., id.* First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) "whether material issues of fact" exist; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, the Court is to assume that due to its default, defendant admits all well-pleaded facts in the plaintiff's

complaint. *Id.* However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (emphasis omitted).

Third, courts determine what form of relief, if any, the plaintiffs should receive. *Ins. Co. of the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the [c]omplaint concerning the defendant's liability, but not damages." (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002))). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III.

### ANALYSIS

Applying this three-part analysis, the Court concludes that a default judgment is (1) procedurally warranted and (2) supported by a sufficient factual basis in Plaintiff's complaint, and that (3) damages can be determined by mathematical calculation without a hearing.

A.   *Entry of Default Judgment is Procedurally Warranted*

After reviewing U.S. Merchants's motion in light of the six *Lindsey* factors, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"). Second, Defendants' "failure to respond threatens to bring the

adversary process to a halt, effectively prejudicing [U.S. Merchants's] interest." *See Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are "clearly established," as Defendants have not responded to the summons and petition, the amended complaint, the entry of default, or the motion for default judgment over the past twenty-one months—despite consenting to removal of this action. *See* Doc. 1, Not. Removal, 5 (consenting to removal); *J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) ("Default judgment is appropriate if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment.'" (citation omitted)). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendants' "complete failure to respond to [U.S. Merchants's] Complaint or otherwise appear . . . 'mitigat[es] the harshness of a default judgment.'" *See COG Marketers, Ltd. v. Bohr*, 2021 WL 3721459, at *2 (N.D. Tex. July 6, 2021) (quoting *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013)). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is procedurally warranted.

B.     *There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in U.S. Merchants's Amended Complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient

basis for U.S. Merchants's claim for relief. *Id.* In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).[3]

U.S. Merchants alleges that Defendants committed fraudulent transfer and civil conspiracy. *See* Doc. 17, Am. Compl., ¶¶ 54–67. Below, the Court examines whether the Plaintiff has sufficiently alleged that it is entitled to relief under these two causes of action.

### 1. Fraudulent Transfer

The Texas Uniform Fraudulent Transfer Act ("TUFTA") was "enacted to protect creditors against depletion of the debtor's estate." *Janvey v. Golf Channel*, 792 F.3d 539, 543 (5th Cir. 2015) (citation omitted). "To that end, TUFTA allows creditors to void fraudulent transfers made by a debtor and force the transferee to return the transfer to the debtor's estate." *Id.* (citing Tex. Bus. & Com. Code Ann. § 24.008); *see also* Tex. Bus. & Com. Code Ann. § 24.009; *Clapper v. Am. Realty*

---

[3] The Fifth Circuit has not addressed whether Rule 9(b)'s heightened pleading standard applies to fraudulent-transfer claims. *See In re Life Partners Holdings*, 926 F.3d 103, 118 (5th Cir. 2019). The heightened pleading standard under Fed. R. Civ. P. 9(b) requires that fraud claims must allege facts that state the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Id.* at 117 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). The Court finds that U.S. Merchants's Amended Complaint satisfies both Rule 8(a)(2) and Rule 9(b) and therefore does not address whether Rule 9(b) applies today.

*Invs., Inc.*, 2016 WL 302313, at *12 (N.D. Tex. Jan. 25, 2016) ("TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made.").

Before a transfer made or obligation incurred may be voided pursuant to TUFTA, the creditor must prove that the transfer or obligation was fraudulent through one of two avenues set forth in the statute: actual or constructive[4] fraudulent transfer. *See* Tex. Bus. & Com. Code Ann. §§ 24.005, 24.006; *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir. 2013). For actual fraudulent transfer under TUFTA, the creditor must show that the transfer was made or the obligation incurred "with actual intent to hinder, delay, or defraud" the creditor after the creditor-debtor relationship was established or within a reasonable time before the creditor's claim arose. Tex. Bus. & Com. Code Ann. § 24.005(a)(1). In determining whether actual fraud has been established under TUFTA, courts consider the statute's "non-exclusive list of eleven factors, commonly known as badges of fraud." *Lam*, 730 F.3d at 437 (quoting *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008)). TUFTA's badges of fraud include:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

---

[4] The Court does not address constructive fraudulent transfer in this case because it finds that the transfers and obligations constituted actual fraudulent transfer.

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code Ann. § 24.005(b). The Fifth Circuit has explained that "[n]ot all, or even a majority, of the 'badges of fraud' must exist to find actual fraud. Indeed, 'when several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Soza*, 542 F.3d at 1067 (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)) (bracket omitted).

As previously stated, Martin and Canna Farms are deemed to have admitted the allegations set forth in U.S. Merchants's Amended Complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Because a debtor is "a person who is liable on a claim,"[5] Martin is a debtor to U.S. Merchants through the Texas Judgment. *See* Doc. 17, Am. Compl., ¶ 21; Doc. 17-3, Tex. J.; Doc. 17-6, Martin 2013 Findings & Conclusions. Further, Martin made monetary transfers to Canna Farms and incurred obligations to Clark and JSCA after entry of the Texas Judgment. Doc. 17, Am. Compl., ¶¶ 57–58; Doc. 32-1, Gannon Decl., Exs. A-4 (Martin personal bank account records), A-5 (Canna Farms accounts records), A-6 (King's Court account records), A-7 (Martin-JSCA Mortgage Agreement), A-8 (wire transaction report of JSCA loan to King's Court), A-9 (Martin deposition testimony of personal loan from Clark). Because Canna Farms received the monetary transfers from Martin, it is a transferee under TUFTA. Doc. 17, Am. Compl., ¶¶ 57–58; Doc. 32-1, Gannon Decl., Exs. A-4 (Martin personal bank account records), A-5 (Canna Farms accounts records).

Below, the Court examines the badges of fraud found in Tex. Bus. & Com. Code Ann. § 24.005(b) for each transfer and determines that they were made "with actual intent to hinder, delay, or defraud" U.S. Merchants. As such, the Court concludes that the pleadings and relevant materials provide a sufficient basis for judgment on U.S. Merchants's fraudulent-transfer claim.

---

[5] Tex. Bus. & Com. Code § 24.002(6).

    *i.*  *Transfers to Canna Farms*

  The badges-of-fraud analysis shows that the monetary transfers that Martin made from his bank account and the bank account of his alter ego, King's Court, to Canna Farms between November 2018 and April 2020 were actually fraudulent. *See* Tex. Bus. & Com. Code Ann. § 24.005(b); Doc. 17, Am. Compl., ¶¶ 57–58; Doc. 32-1, Gannon Decl., Exs. A-4 (Martin personal bank account records), A-5 (Canna Farms accounts records). First, an insider of an individual debtor includes a general partner of the debtor or a corporation that the debtor is a "director, officer, or person in control." Tex. Bus. & Com. Code Ann. § 24.002(7). Martin, as the president, is a "person in control" of Canna Farms, so Canna Farms is an insider. *See* Doc. 17, Am. Compl., ¶¶ 7(c), 59; Doc. 17-2, Articles of Incorporation. As discussed earlier, U.S. Merchants established a creditor-debtor relationship with Martin in 2013. Doc. 17-3, Texas J. Thus, Martin made transfers to an insider—Canna Farms—following the establishment of a creditor-debtor relationship with U.S. Merchants. Tex. Bus. & Com. Code Ann. § 24.005(b)(1). Second, as president of Canna Farms and a signatory on his bank account, Martin retains control of the monetary assets following the transfers to Canna Farms. *See* Doc. 17, Am. Compl., ¶¶ 7(c), 59; Doc. 17-2; Tex. Bus. & Com. Code Ann. § 24.005(b)(2). Third, Martin concealed transactions made to Canna Farms from his and King's Court's accounts, which were only found through post-judgment discovery. Doc. 17, Am. Compl., ¶¶ 7(c), 40, 49, 57; Doc. 32-1, Gannon Decl., Exs. A-5, A-6; Tex. Bus. & Com. Code Ann. §§ 24.005(b)(3),(7). And Martin claimed that he made the transfers to "stay[] one step ahead" of his creditors. Doc. 17, Am. Compl., ¶ 49. Fourth, Martin was successfully sued before the transfers took place, as evidenced by the Texas Judgment. *Id.* ¶¶ 21, 55; Doc. 17-6, Martin 2013 Findings & Conclusions; Tex. Bus. & Com. Code Ann. § 24.005(b)(4). Fifth, Martin has absconded to Florida

as evidenced by his move in 2020. Doc. 17, Am. Compl., ¶¶ 7(a), 47–48, 50; Doc 17-12, Martin Decl. Domicile; Doc. 17-17, Freedom Title Email Chain; Tex. Bus. & Com. Code Ann. § 24.005(b)(6). And sixth, Martin previously claimed to be insolvent prior to the transfers. Doc. 17, Am. Compl., ¶ 25; Tex. Bus. & Com. Code Ann. § 24.005(b)(9). Because various badges of fraud have been established, the Court finds that Martin's transfers to Canna Farms were made with actual intent to hinder, delay, or defraud his creditor, U.S. Merchants. *See, e.g., Spring St.*, 730 F.3d at 438 (holding that transferring assets to an insider following a recent threat of suit while still retaining control of the assets was a sufficient basis for finding fraudulent intent).

        ii.        *Loans incurred by King's Court to JSCA*

The badges of fraud analysis likewise shows that JSCA's loan to King's Court was an actually fraudulent transfer. Martin, through his King's Court alter ego,[6] incurred an obligation to JSCA when JSCA loaned King's Court $50,000 in March 2018. Doc. 17, Am. Compl., ¶¶ 7(c), 35; Doc. 32-1, Gannon Decl., ¶ 12, Ex. A-8. There is no evidence that JSCA received any consideration for the

---

[6] Under Texas law, courts can disregard a corporate entity when "there exists such unity between the corporation and individual that the corporation ceases to be separate and when holding only one corporation liable would promote injustice." *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 430 (N.D. Tex. 2021) (quoting *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990)).

> [T]o pierce the corporate veil and impose liability under an alter-ego theory, the plaintiff must demonstrate (1) that the entity on which it seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit.

*U.S. KingKing, LLC v. Precision Energy Servs.*, 555 S.W.3d 200, 213–14 (Tex. App.—Houston[1st Dist.] 2018, no pet.) (citation omitted). Here, U.S. Merchants has alleged that King's Court is Martin's alter ego as Martin governs King's Court and only uses King's Court accounts for personal expenditures, making King's Court inseparable from Martin. Doc. 17, Am. Compl., ¶ 44; *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206 (finding that a defendant who fails to answer is presumed to admit to well-pleaded facts). Further, U.S. Merchants has alleged that Martin has previously explained that he uses King's Court (and Canna Farms) to "stay[] one step ahead" of his creditors. *See* Doc. 17, Am. Compl., ¶ 49. Under these circumstances, the Court finds that U.S. Merchants has sufficiently established that King's Court is Martin's alter ego.

$50,000, let alone a reasonably equivalent amount of consideration. Tex. Bus. & Com. Code Ann. § 24.005(b)(8). Additionally, like the transfers to Canna Farms, the obligation to JSCA was uncovered in post-judgment discovery and was incurred after entry of the Texas Judgment in order to keep creditors from collecting their debts. Doc. 17, Am. Compl., ¶¶ 21, 24, 40, 49, 55; Doc. 17-6, Martin 2013 Findings & Conclusions; Tex. Bus. & Com. Code Ann. §§ 24.005(b)(3),(7). Further, Martin declared insolvency prior to incurring the obligation and has since absconded to Florida. Doc. 17, Am. Compl., ¶¶ 7(a), 25, 47, 50; Doc 17-12, Martin Decl. Domicile; Doc. 17-17, Freedom Title Email Chain; Tex. Bus. & Com. Code Ann. §§ 24.005(b)(6),(9). Thus, Martin's obligation to JSCA reveals several badges of fraud, which strongly suggests an actual intent to hinder, delay, or defraud U.S. Merchants. *See, e.g., Thomas v. Hughes*, 2022 WL 620238, at *12 (5th Cir. Mar. 3, 2022) (holding that a jury could find fraudulent intent based on the existence of at least five badges of fraud); *Taylor v. Trevino*, 2021 WL 4822018, at *5 (N.D. Tex. Oct. 15, 2021) (determining that fraudulent intent was adequately pleaded when five badges of fraud were present).

### iii. *Loans incurred by Martin to JSCA and Clark*

Martin's obligations to JSCA and Clark qualify for the same badges of fraud as the loan incurred by King's Court to JSCA. Doc. 17, Am. Compl., ¶¶ 34, 39; Doc. 32-1, Gannon Decl., ¶¶ 11, 13, Exs. A-7, A-9. Again, there is no evidence that JSCA or Clark received any consideration for the $425,000 loan from JSCA or the $6,000 loan from Clark. Doc. 17, Am. Compl., ¶¶ 34, 39; Doc. 32-1, Gannon Decl., ¶¶ 11, 13, Exs. A-7, A-9; Tex. Bus. & Com. Code Ann. § 24.005(b)(8). These loans were only discovered in post-judgment discovery and occurred following the Texas Judgment in order to prevent creditors from collecting on their debts. Doc. 17, Am. Compl., ¶¶ 21, 24, 40, 49, 55; Doc. 17-6, Martin 2013 Findings & Conclusions; Tex. Bus. & Com. Code

Ann. §§ 24.005(b)(3),(7). Lastly, Martin previously declared insolvency and has since absconded to Florida. Doc. 17, Am. Compl., ¶¶ 7(a), 25, 47, 50; Doc 17-12, Martin Decl. Domicile; Doc. 17-17, Freedom Title Email Chain; Tex. Bus. & Com. Code Ann. §§ 24.005(b)(6),(9). The numerous badges of fraud established here illustrate that Martin likely incurred these obligations with an actual intent to hinder, delay, or defraud U.S. Merchants. *See, e.g., Thomas*, 2022 WL 620238, at *12; *Taylor*, 2021 WL 4822018, at *5.

Because multiple badges of fraud were met for each transfer made or obligation incurred, the Court finds that U.S. Merchants has sufficiently established that Martin committed fraudulent transfers under TUFTA in regards to the transfers made to Canna Farms and the obligations incurred to JSCA and Clark.

2. Civil Conspiracy

Under Texas law, civil conspiracy is "generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Apani Sw., Inc. v. Coca–Cola Enters.*, 300 F.3d 620, 635 (5th Cir. 2002) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Co-conspirators are jointly and severally liable for the damages incurred as a result of the underlying tort. *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 405 (5th Cir. 2013); *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 506 (Tex. App.—Dallas 2013, pet. denied) ("A finding of civil conspiracy

further imposes joint and several liability on all conspirators for actual damages resulting from acts in furtherance of the conspiracy.").

In this instance, Defendants conspired together to move money from Martin's personal account and the accounts of his alter ego, King's Court, into the account of Canna Farms. Doc. 17, Am. Compl., ¶¶ 7(c), 40, 49, 57; Doc. 32-1, Gannon Decl., Ex. A-5, A-6. A meeting of the minds existed as Martin is the president of Canna Farms and had admitted to using the Canna Farms business account for personal expenditures. Doc. 17, Am. Compl., ¶¶ 7(c), 41, 49, 59; Doc. 17-2, Articles of Incorporation. As discussed above, these transfers amounted to fraudulent transfer, which is a tort under Texas law and therefore an overt, illegal act. *See In re 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021) (stating that fraudulent transfer can serve as an underlying tort for civil conspiracy). The damages that resulted were in the amount of $34,464, which is the total sum of money of the transfers made from Martin and King's Court to Canna Farms from November 2018 to April 2020. *See* Doc. 32-1, Gannon Decl., ¶ 10, Exs. A-5, A-6. Thus, U.S. Merchants has sufficiently alleged both Martin and Canna Farms are jointly and severally liable for $34,464 due to the fraudulent transfers that occurred from November 2018 to April 2020.

C.     *The Court Can Ascertain Damages*

U.S. Merchants seeks actual damages and post-judgment interest. *See* Doc. 32, Pl.'s Mot., 5. The Court must now determine whether U.S. Merchant's motion, along with its attached supporting documentation, is sufficient to allow the Court to award U.S. Merchants damages, or if a hearing is required.

1.  Actual Damages

U.S. Merchants requests "$34,464 in actual damages against Martin and Canna Farms, jointly and severally" and "$481,000 in actual damages against Martin." *Id.* To support the $34,464 against Martin and Canna Farms jointly and severally, U.S. Merchants provides bank records showing thirteen transfers from Martin or King's Court to Canna Farms between November 14, 2018, and April 29, 2020. *See* Doc. 32-1, Gannon Decl., ¶ 10, Exs. A-5, A-6. To support the $481,000 against Martin individually, U.S. Merchants provides (1) a "copy of a Note and Mortgage Modification Agreement, dated April 25, 2017, reflecting a $425,000 obligation incurred to JSCA . . . by Martin"; (2) "a wire transaction report reflecting a [$50,000] wire transfer on March 13, 2018, from JSCA . . . to Martin's . . . King's Court [account]"; and (3) "an excerpt from the deposition of . . . Martin . . . dated November 4, 2020, wherein [he] testified as to a $6,000 obligation he incurred to . . . Clark in or around May 2019." *Id.* ¶¶ 11–13, Exs. A-7, A-8, A-9.

The Court finds this evidence sufficient to support a mathematical calculation of actual damages. *See James*, 6 F.3d at 310. Therefore, the Court **GRANTS** U.S. Merchants's request for $34,464 in actual damages against Martin and Canna Farms, jointly and severally, and $481,000 in actual damages against Martin.

2.  Post-judgment Interest

U.S. Merchants also requests post-judgment interest. Doc. 32, Pl.'s Mot. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Simply put, district courts do not have the discretion to deny post-judgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). Post-judgment interest

"shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). This amount can be determined by mathematical calculation, so no hearing is necessary. *See James*, 6 F.3d at 310. The Court therefore **GRANTS** U.S. Merchants's request for post-judgment interest on all damages awarded herein, at the statutory rate, from the entry of the final default judgment until paid.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds that U.S. Merchants has provided sufficient allegations to support the requested relief for these two causes of action. Thus, the Court **GRANTS** Plaintiff's Motion for Default Judgment (Doc. 32) on these claims, and awards Plaintiff U.S. Merchants the amount of $34,464 against Martin and Canna Farms, jointly and severally, and the amount of $481,000 against Martin, in addition to post-judgment interest at the statutory rate.

**SO ORDERED**.

**SIGNED: April 4, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE